MC LAW NEVADA
Robert McCoy, No. 9121
1775 Village Center Circle, Suite 110
Las Vegas, Nevada 89134
(702) 570-5435
rob@mclawnevada.com

STEPTOE LLP
Michael J. Allan (*pro hac vice*)
Cannon M. Jurrens (*pro hac vice*)
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mallan@steptoe.com
cjurrens@steptoe.com

ZACHARIA LAW PLLC
John H. Zacharia (*pro hac vice*)
1701 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 845-5091
john@zacharialaw.com

Attorneys for Plaintiff Louis Vuitton
Malletier S.A.S.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LOUIS VUITTON MALLETIER S.A.S., <br><br> Plaintiff, <br><br> vs. <br><br> FANTASTIC INDOOR SWAP MEET, INC., ARTHUR LAMENSDORF, JR., DOUG KAYS, and DAVID PRESENT, <br><br> Defendants. | Case No. 2:25-cv-01574-EJY <br><br> **PLAINTIFF LOUIS VUITTON MALLETIER S.A.S.'S REPLY IN SUPPORT OF MOTION TO COMPEL** |


M C   L A W

## I.    INTRODUCTION

Defendants' opposition (ECF No. 52) to Louis Vuitton's motion to compel (ECF No. 47) is long on accusations and short on answers.  Defendants devote most of their brief rewriting history to attack Louis Vuitton and air their grievances about the discovery process.  They boast about the volume of documents they have produced while simultaneously complaining about having chosen to do so.  Yet they also admit that they failed to produce (and confirmed on June 4, 2026 would never produce) documents that are the subject of Louis Vuitton's motion to compel.  Hidden in the opposition's prolix rhetoric is Defendants' concession (for the first time) that they do, in fact, have to produce most of what they categorically stated on June 4 that they would never produce.

Stripped of the distractions, Louis Vuitton's motion presents five straightforward disputes: (1) Defendants' withholding of material predating August 22, 2021; (2) Defendants' refusal to produce responsive financial information; (3) Defendants' unilateral limitation of vendor discovery to vendors Louis Vuitton has already identified; (4) Defendants' withholding of discovery concerning complaints and enforcement efforts involving Louis Vuitton and other trademark holders; and (5) Defendants' refusal to produce relevant personnel, training, and management materials. Those are the issues before the Court.

On each issue, Defendants' opposition largely concedes (for the first time) the relevance of Louis Vuitton's requests while offering no competent evidence for their prior objections that the requested discovery is burdensome, disproportional, or otherwise improper.  There are no declarations quantifying

MC LAW

1 of 13

burden, no cost estimates, no explanation of collection obstacles, and no evidentiary support for the sweeping limitations Defendants are trying to impose.

Instead, Defendants concede relevance but seek to replace the Federal Rules with rhetoric and unilateral discovery restrictions of their own making and create ambiguity about whether they will *fully* comply with Louis Vuitton's reasonable discovery requests or, critically, *when* they will fully comply.  Federal Rule of Civil Procedure 26 does not allow a party to evade discovery obligations through attorney argument or self-imposed limitations unsupported by evidence. Accordingly, Louis Vuitton respectfully requests that the Court order Defendants to (1) produce information that is fully responsive to the five requests set forth in Louis Vuitton's motion to compel as Defendants now (mostly) agree they must and (2) set a date certain by when Defendants must comply.

## II.   ARGUMENT

### A.   Louis Vuitton Met All Necessary Procedural Requirements Before Filing This Motion to Compel.

As a threshold matter, Defendants' allegation that Louis Vuitton's motion is premature ignores the record.  Defendants contend that they are now mostly complying with Louis Vuitton's requests because they had not had the opportunity to do so previously.  A simple review of the timeline leading up to Louis Vuitton's motion to compel belies Defendants' contention.

Defendants' response to Louis Vuitton's January 2026 discovery requests were deficient.  As a result, Louis Vuitton served a detailed deficiency letter on May 12, 2026.  The parties met and conferred regarding Defendants' deficiencies on May 28, 2026, in which Defendants agreed to submit their final substantive

MC LAW

response to Louis Vuitton's May 12 letter on June 4, 2026. [1]  Louis Vuitton made clear that, if Defendants did not have any substantive disagreement with Louis Vuitton's requests, then there would be no need for a motion to compel.  ECF No. 47-6 at 2 ("If [Defendants] indicate to [Louis Vuitton] on June 4, 2026 that the parties have no substantive disagreements regarding the discovery issues raised in the May 12 letter … [Louis Vuitton] will have no need for a motion to compel").

In their June 4 response, Defendants maintained their disagreement on five substantive areas in their June 4 letter.  At this point, the parties reached an impasse—leaving Louis Vuitton no choice but to file this motion to compel.  Where, as here, a party has expressly refused to produce discovery, the refusing party cannot avoid judicial review by suggesting that one more meet-and-confer might have changed its mind.  Federal Rule of Civil Procedure 37 requires a good-faith effort to resolve disputes, not endless conferences after an impasse has been reached.  *See Care Envtl. Corp. v. M2 Techs. Inc.*, No. CV-05-1600 (CPS), 2006 WL 1517742, at

---

[1] Defendants repeatedly fault Louis Vuitton for allegedly failing to discuss narrowing the search terms Defendants unilaterally selected (ECF No. 50-1), but that criticism is misplaced for one simple reason: Defendants repeatedly refused (including in their June 4 letter) to produce the documents that are the subject of the motion to compel. In other words, no matter how large or small Defendants' production would be, Defendants made clear that their production would never include the documents Louis Vuitton requested and continues to request in its motion to compel. Accordingly, the volume of documents returned by Defendants' search terms does not excuse their failure to produce the responsive discovery at issue.

In any event, Louis Vuitton responded to Defendants' April request in its May 12 deficiency letter and identified the deficiencies that continued to exist notwithstanding Defendants' proposed search methodology.  Defendants simply elected their own collection, search, and review protocols and produced the result of those protocols.  Having done so, Defendants cannot now invoke the volume generated by those choices as a basis for withholding responsive documents. Search-term discussions are not a substitute for compliance with Rule 34.


MC LAW

*3 (E.D.N.Y. May 30, 2006).  Rule 37 did not require Louis Vuitton to continue negotiating objections Defendants continued to maintain during discovery, the May 28 meet and confer, and in their June 4 letter.  Fed. R. Civ. P. 37(a)(1).

Having clearly maintained their objections on June 4, Defendants cannot seriously contend that Louis Vuitton was required to continue conferring indefinitely before seeking relief from the Court.  ECF No. 47-3.[2]  Accordingly, Louis Vuitton's motion is properly before this Court.

**B.    Defendants Cannot Restrict Discovery to Post-August 2021 Materials.**

The Court did not impose an August 22, 2021 discovery cutoff.  To the contrary, it expressly recognized that pre-August 2021 evidence may demonstrate the "pattern of conduct necessary to establish a willful violation of trademark rights." ECF No. 24 at 4.  For the first time, Defendants concede in their opposition that at least some pre-2021 notice and enforcement materials are discoverable.  ECF No. 52 at 14–15 ("Defendants do not dispute that pre-2021 evidence of notice and enforcement may be relevant to the pattern of conduct the Court identified.").

---

[2] For the same reason, Defendants cannot rely on the uncompleted June 8, 2026 conference to manufacture a procedural defense.  As already outlined in the motion to compel,  Defendants made clear in their June 4 letter that they would not produce the documents now at issue in the motion to dismiss (ECF No. 34).  Nevertheless, Louis Vuitton expressed its willingness to schedule a meet and confer with Defendants on June 8, 2026.  Although, as Defendants concede, Louis Vuitton sent a written invitation to meet and confer for June 8 by email, Defendants refused to do so on June 8 (or any other date) to avoid this motion.  Instead, Defendants' lead counsel (who was uninvolved in the meet and confer process regarding a potential motion to compel) called Louis Vuitton's counsel regarding Defendants' motion for an extension (ECF No. 45)—not to discuss Louis Vuitton's motion to compel. Thus, and contrary to the claims in nearly every section of their opposition, the record is clear that it is Defendants who refused to participate in any further meet and confers related to Louis Vuitton's motion to compel.  ECF No. 47-1 at ¶¶ 4, 7.



Although Defendants could have advised Louis Vuitton of this new position at any time after Louis Vuitton's original January 2026 requests, including during the May 28 meet and confer or in their June 4 letter, Defendants chose to force Louis Vuitton to file this motion before making this concession.

That concession undermines their prior blanket cutoff. Defendants now offer to produce (at an unknown time) "documents concerning notice of counterfeiting at the Market and Defendants' enforcement efforts during that earlier [pre-2021] period." *Id.* at 14–15. Based on Louis Vuitton's arguments and Defendants' concession, the Court should order Defendants to produce all non-privileged documents related to Defendants' intent from January 1, 2017 to present.

### C.    Defendants Must Produce All Responsive Financial Information.

Defendants' opposition confirms that an order compelling all responsive financial discovery is necessary. In their June 4 letter, Defendants refused to produce core categories of financial information, including accounting records, profit-and-loss statements, balance sheets, and related financial data. ECF No. 47-3. Now, faced with this motion, Defendants retreat from that position and promise that "Defendants are producing financial categories that Louis Vuitton identifies as relevant and proportional."[3] ECF No. 52 at 15. But Defendants do not make clear that they will produce *all* non-privileged documents responsive to Louis Vuitton's requests related to financial records. Rule 26 does not permit a responding party to unilaterally decide, without basis, which responsive documents the

---

[3] While Defendants refused to produce core financial information relevant to this case, they had no issue with producing irrelevant financial information regarding Mr. Lamensdorf's auto repair shop, further highlighting Defendants' lack of diligence in their productions.


MC LAW

requesting party is entitled to see.  Notably, Defendants still do not identify what specific financial documents they will produce or withhold, much less when any production will occur.

Defendants also do not (because they cannot) dispute the requested financial documents' relevance.  Defendants' financial records will reveal evidence of intent by showing whether (1) Defendants had economic incentives to retain vendors despite known infringement, (2) revenue streams were tied to vendor activity, and (3) enforcement efforts were influenced (or undermined) by financial considerations.  Equally important, courts in this circuit consider a defendant's finances as one of the factors in calculating statutory damages. *Adobe Sys. Inc. v. Acheampong*, No. 17-CV-02749-CW (RMI), 2018 WL 6613832, at *11 (N.D. Cal. Nov. 15, 2018) (considering financial documents when determining appropriate amount of statutory damages), *report & recommendation adopted*, No. 17-CV-02749-CW, 2019 WL 2181968 (N.D. Cal. Feb. 22, 2019).  Clearly, Defendants' financial information is relevant to multiple issues in the case.

Ultimately, Defendants do not defend their original refusal; they abandon it.  What remains is Defendants' attempt to reserve for themselves the authority to determine which responsive financial records Louis Vuitton may obtain. Rule 26 does not allow such self-selected production. Because Defendants have identified no burden, offered no actual evidence of disproportionality, and do not dispute the relevance of financial information to Louis Vuitton's claims, the Court should compel Defendants to produce all responsive financial records.



**D.    Defendants Must Produce Relevant Information for All Vendors.**

Defendants' position creates an obvious catch-22: Louis Vuitton can obtain records only for vendors it already knows about, while Defendants refuse to produce records of infringing vendors that Louis Vuitton *does not* know about even though only Defendants would have such records.  The records Defendants withhold are the very records that may identify additional infringing vendors, complaints, investigations, violations, and enforcement actions.  Defendants cannot use their exclusive control of vendor records as both a shield against discovery and the basis for arguing that Louis Vuitton has not identified enough infringing vendors.[4]

The relevant question is what Defendants knew, not what Louis Vuitton knew.  Vendor records and Booth Tracker data bear directly on that issue because they reveal the complaints of counterfeiting that Defendants received, the violations they tracked, the investigations they conducted, and the enforcement actions they took (and did not take).  Restricting discovery to vendors already identified by Louis Vuitton would prevent discovery into the very evidence needed to assess Defendants' knowledge, willful blindness, and enforcement practices.

Defendants, not Louis Vuitton, operated the Market and maintained vendor records.  Once on notice, Defendants should have identified or investigated infringing vendors that trademark owners, including Louis Vuitton, never discovered.  That is precisely why vendor records, in addition to those vendors

---

[4] Defendants devote considerable space to criticizing Louis Vuitton's pre-suit enforcement efforts.  Apart from the fact that those criticisms of Louis Vuitton are false, they are also a red herring. The relevant issues in this case are Defendants' knowledge of counterfeiting and their willful blindness as reflected by their inadequate enforcement efforts. Defendants cannot avoid discovery into their own conduct by attempting to shift the focus to Louis Vuitton.


MC LAW

already identified by Louis Vuitton, are relevant.[5]  Defendants have also failed to articulate (because they cannot) why producing all vendor records would be burdensome.  Repeated references to "1,614 vendors" does not evidence a burden given that Defendants have disclosed a centralized system where all vendor records are kept and are easily tracked.  In fact, Defendants' Booth Tracker system can easily export information and reports as to all vendors directly from its database.

Ultimately, Defendants cannot have it both ways.  They claim to have monitored vendors, tracked violations, investigated complaints, and enforced anti-counterfeiting policies throughout the Market, yet seek to limit discovery only to the vendors already identified by Louis Vuitton.  If Defendants monitored counterfeiting market-wide, the requested records are relevant.  If they did not, that fact is equally relevant. Either way, the records are discoverable and proportional under Rule 26, and the Court should compel their production.

**E.**    **Defendants Must Produce Responsive Material Related to Other Trademark Holders' Enforcement Efforts.**

In their June 4 letter, Defendants claimed there was "no basis" for discovery concerning complaints and enforcement efforts involving other brands.

---

[5] Defendants repeatedly assert that Louis Vuitton bears the burden of policing its own marks without acknowledging their own obligations.  Once a marketplace operator is placed on notice that its vendors are offering counterfeit goods for sale, the operator cannot just ignore that information and continue with business as usual. *YYGM v. Redbubble*, 75 F.4th 995, 1003 (9th Cir. 2023) ("willful blindness arises when a defendant was 'made aware that there was infringement on its site but … ignored that fact'") (quoting *Omega SA v 375 Canal LLC*, 984 F.3d 244, 255–56 (2d Cir. 2021)).  Rather, landlords like Defendants must take sufficient good faith steps to investigate and root out counterfeiting that they knew or should have known about to avoid contributory liability. *See id.*  The requested materials are plainly relevant to whether Defendants acquired knowledge of widespread counterfeiting and responded appropriately once placed on notice.


MC LAW

ECF No. 47-3 at 9.  Now, however, Defendants concede that complaints involving other trademark holders may bear on knowledge and notice. ECF No. 52 at 18. Having conceded relevance, Defendants can no longer withhold these responsive materials.

Nevertheless, Defendants continue to unilaterally impose limitations by proposing to produce only those records they, and they alone, deem to involve "counterfeiting" or "actual notice," without identifying what documents will be produced and what documents will be withheld.  Rule 26 does not permit Defendants to unilaterally narrow otherwise relevant discovery based on their own characterization of the evidence.  The relevance of these materials lies in what they reveal about Defendants' knowledge of counterfeiting at the Market and their response to that knowledge. *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1003 (9th Cir. 2023) (citing *Omega SA*, 984 F.3d at 255); *Omega SA*, 984 F.3d at 256 (citing *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1320 (11th Cir. 2019)).  Complaints from multiple brand owners tend to show that counterfeiting was a persistent, market-wide problem—not an isolated issue involving Louis Vuitton alone. *See id.*  How Defendants responded to those complaints likewise bears directly on notice, willful blindness, and the adequacy of their enforcement efforts.

Because Defendants have conceded their relevance and identified no burden associated with producing them, the Court should compel production of responsive documents concerning complaints, investigations, and enforcement efforts involving other trademark holders.

M C LAW

**F.   Defendants Must Produce Responsive Personnel, Training and Management Records.**

Defendants acknowledge that personnel records relating to counterfeit enforcement are relevant, yet refuse to produce the records that would show whether their purported anti-counterfeiting program existed in practice or merely on paper. ECF No. 47-3 at 7.  Contrary to Defendants' post-motion claim, Louis Vuitton is not seeking wholesale personnel files.  Louis Vuitton seeks targeted records for those employees that managed the Market, oversaw vendors, invested infringement, and enforced anti-counterfeiting policies.  Training materials, job descriptions, management directives, disciplinary records, and performance materials all bear directly on whether Defendants exercised meaningful control over the Market and took reasonable steps to address known infringement.

Defendants repeatedly claim they trained employees, investigated complaints, and enforced anti-counterfeiting policies.  But they refuse to produce the records showing how those policies were implemented.  If employees were trained to identify counterfeit goods, there should be training materials and evidence of who did the training and who was trained.  If they were tasked with vendor oversight, there should be job descriptions and directives.  There should be records reflecting how those responsibilities were supervised and evaluated.  Louis Vuitton is entitled to discovery demonstrating whether Defendants' compliance program existed, and if so, whether it was sufficient.[6]

---

[6] Defendants' privacy objection is equally unpersuasive.  A protective order (ECF No. 33) already safeguards confidential personnel information.   Moreover, Defendants have already produced thousands of pages of very personal text messages and communications under that order.  Having done so, they cannot


MC LAW

Because the requested personnel, training, and management records bear directly on Defendants' knowledge of counterfeit activity, implementation of anti-counterfeiting policies, and enforcement efforts, and because Defendants have shown neither burden nor privilege, the Court should compel their production.

## III.   CONCLUSION

For these reasons, the Court grant this motion to compel in its entirety and order Defendants to produce the requested discovery without further delay.[7]

MC LAW NEVADA



Robert McCoy, No. 9121
1775 Village Center Circle, Suite 110
Las Vegas, Nevada 89134

STEPTOE LLP
Michael J. Allan (*pro hac vice*)
Cannon M. Jurrens (*pro hac vice*)
1330 Connecticut Avenue, NW
Washington, DC 20036

---

credibly contend that narrowly tailored records relating to anti-counterfeiting responsibilities are too sensitive to produce under that same protective order.

[7] If the Court grants Louis Vuitton's motion, Rule 37(a)(5)(A) requires an award of fees.   As explained above, Louis Vuitton fully satisfied its meet-and-confer obligations and sought to avoid filing the motion to compel.  After Defendants' June 4 letter unequivocally refused to produce the requested categories of discovery, no further conferral was required. Louis Vuitton was left with no choice but to file this motion.  And even if Defendants could argue another meet and confer was needed, it was Defendants—not Louis Vuitton—who refused to continue meeting and conferring on June 8. The issue is whether Defendants improperly withheld responsive discovery, and the record shows that they did.   In their opposition, Defendants largely concede that they did.  Accordingly, if the Court grants this motion, Louis Vuitton is entitled to its fees and expenses under Rule 37(a)(5)(A).

MC LAW

ZACHARIA LAW PLLC
John H. Zacharia (*pro hac vice*)
1701 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006

Attorneys for Plaintiff Louis Vuitton
Malletier S.A.S.



MC LAW

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that the following document was served on the date below by electronic transmission through the United States District Court for the District of Nevada's CM/ECF Electronic Filing System to the counsel of record and/or parties appearing on the electronic service list in CM/ECF:

**PLAINTIFF LOUIS VUITTON MALLETIER S.A.S.'S**
**REPLY IN SUPPORT OF MOTION TO COMPEL**

DATED July 6, 2026

_____
Tera Carlstrom


MC LAW

13 of 13